IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

  Vs.                              Nos.  06-40079-03-SAC
                                          09-4083-SAC

ROBERT GUZMAN,

          Defendant.

## MEMORANDUM AND ORDER

This case is before the court on the defendant's motion for relief pursuant to 28 U.S.C. § 2255.  (Dk. 248).  The government has filed its response opposing the motion.  (Dk. 267).  The defendant sought repeated extensions of time to file a reply, and the last extension expired on July 29, 2010, (Dk. 286) without any filing from the defendant.  The case is ripe for decision.

**BACKGROUND**

In February of 2008, without a written plea agreement, the defendant pleaded guilty to counts one and two of the third superseding indictment.  Count one charged the defendant and four others with conspiracy to distribute and possess with the intent to distribute

approximately 24 kilograms of cocaine hydrochloride.  Count two charged

the defendant and four others with possession with the intent to distribute

24 kilograms of cocaine hydrochloride.  At sentencing, the defendant

stipulated to the application of the career offender guidelines, and the

government agreed to not produce evidence for the enhancements of role

and obstruction of justice that would support a higher guideline range for

the drug offenses.  The court sentenced the defendant to 327 months, the

top end of the guideline range applicable to the defendant as a career

criminal.

The defendant did not file a direct appeal but did file this § 2255

motion within the governing limitations period.  The defendant's motion

seeks relief pursuant to 28 U.S.C. § 2255 and raises three claims of

constitutional error:  1) that defense counsel was ineffective in not

conducting an independent pretrial investigation of the witnesses

cooperating with the government, of a possible *Brady* violation, and of

possible prosecutorial misconduct; 2) that defense counsel was ineffective

in not interviewing possible defense witnesses and in not attempting to

interview government witnesses; and 3) that defense counsel was

ineffective in that he labored under a conflict of interest created by the

discovery agreement with the government and by the government restricting his counsel from drawing on the attorney's fee deposit made on the defendant's behalf.

## GOVERNING STANDARDS FOR § 2255 RELIEF

A district court may grant relief under § 2255 if it determines "that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. "Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." *United States v. Warner*, 23 F.3d 287, 291 (10th Cir.1994) (citation omitted), *cert. denied*, 502 U.S. 943 (2005).

The court must hold an evidentiary hearing on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *United States v. Galloway*, 56 F.3d 1239, 1240 n. 1 (10th Cir.1995). The burden is with the defendant to allege facts which, if proven, would entitle him or her to relief. *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *cert. denied*,

517 U.S. 1235 (1996). "[T]he allegations must be specific and particularized, not general or conclusory." *Id.* The court may dispense with an evidentiary hearing when the movant's factual allegations are "contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact." *United States v. Caraway*, 2010 WL 3721689 at *2 (D. Kan. Sept. 15, 2010) (citing *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) ("rejecting ineffective assistance of counsel claims which are merely conclusory in nature and without supporting factual averments")). The court finds that a hearing on the defendant's motion is not necessary because the materials already in the record conclusively show that the defendant is not entitled to relief on his claims. The body of this order fully supports this finding.

As summarized above, the defendant argues exclusively that he did not receive effective assistance of counsel leading up to his entry of a guilty plea. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI; *Kansas v. Ventris*,

129 S. Ct. 1841 (2009).  To prevail on a claim of ineffective assistance of counsel, the defendant must prove two prongs:  first, "that his 'counsel's representation fell below an objective standard of reasonableness,' *Strickland v. Washington*, 466 U.S. 668, 688 (1984)," and second, "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' *id.* at 694." *United States v. Taylor*, 454 F.3d 1075, 1079 (10th Cir. 2005).  "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Strickland v. Washington*, 466 U.S. at 697.

With regard to the first prong of objective reasonableness, it must be noted that "'[t]he Supreme Court has recognized that because representation is an art and not a science, even the best criminal defense attorneys would not defend a particular client in the same way.'" *Fields v. Gibson*, 277 F.3d 1203, 1217 (10th Cir.) (quoting *Waters v. Thomas*, 46 F.3d 1506, 1522 (11th Cir. 1995) (en banc) (alterations, quotation marks, and citations omitted), *cert. denied*, 516 U.S. 856 (1995)), *cert. denied*, 537 U.S. 1023 (2002).  To be constitutionally deficient, defense counsel's performance must be "completely unreasonable, not merely wrong." *Boyd*

*v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999), *cert. denied*, 528 U.S. 1167 (2000). Proof must show the counsel's conduct was not "within the wide range of competence demanded of attorneys in criminal cases." *United States v. Blackwell*, 127 F.3d 947, 955 (10th Cir. 1997) (quotation and citations omitted). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).[1]

─────────────────

[1]This point is more fully developed in the following quotation from the Supreme Court's decision in *Tollett*:

If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases,' *McMann v. Richardson*, supra, 397 U.S. at 771. Counsel's failure to evaluate properly facts giving rise to a constitutional claim, or his failure properly to inform himself of facts that would have shown the existence of a constitutional claim, might in particular fact situations meet this standard of proof. Thus, while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief.

We thus reaffirm the principle recognized in the Brady trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent

A court is highly deferential in its review of the attorney's performance.  *Strickland*, 466 U.S. at 689.  The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689; *see United States v. Holder*, 410 F.3d 651, 654 (10th Cir. 2005).  "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 281 (1986).

To prove the second prong of prejudice, the defendant must show that but for counsel's constitutionally ineffective performance there was a reasonable probability that the outcome of his conviction or sentence would have been different. *See Strickland*, 466 U.S. at 694; *Boyd v. Ward*, 179 F.3d at 914.  A defendant who challenges a guilty must show that "'but for counsel's errors, [he] would not have pleaded guilty and insisted on

claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

*Tollett v. Henderson*, 411 U.S. 258, 266-267 (1973).

going to trial.'" *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993) (quoting *Hill v. Lockhart*, 474 U.S. at 59), *cert. denied*, 510 U.S. 1184 (1994). Further, a "defendant's statements on the record, 'as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.'" *Romero v. Tansy*, 46 F.3d 1024, 1033 (10th Cir.) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)), *cert. denied*, 515 U.S. 1148 (1995). The defendant may challenge his guilty plea only by showing ineffective assistance of counsel. It is well established that a voluntary and unconditional guilty plea waives all non-jurisdictional defenses. *See United States v. Hawthorne*, 316 F.3d 1140, 1145 (10th Cir.), *cert. denied*, 540 U.S. 884 (2003). The Supreme Court in *Hill* discussed the typical inquiry for the prejudice prong in a guilty plea setting:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a

8

potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. *See, e.g., Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir. 1984) ("It is inconceivable to us ... that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). As we explained in *Strickland v. Washington*, *supra*, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." *Id.*, 466 U.S., at 695.

*Hill*, 474 U.S. at 59-60.

## CHANGE OF PLEA PROCEEDINGS

At the time of his plea, the defendant was 37-years old and was experienced with the judicial system having been convicted and sentenced for two prior serious felonies. When he was 19-years old, the defendant was found guilty of attempted murder and was sentenced to five-years custody. When he was 27-years old, he was sentenced to seven years and four months of imprisonment for possession of marijuana for sale and armed with a firearm.

At the change of plea hearing and while under oath, the defendant told the court that he was satisfied with the services of his attorney. (Dk. 176, p. 4). The defendant said he was entering a plea of guilty to counts one and two of the third superseding indictment, because

9

he was "unfortunately" guilty of those offenses. *Id.* at 7. The court directed

the government "to make a representation" of the evidence that it believed

could be offered in the case:

> MR. COODY: Your Honor, on or about June 1st of 2006, at
> approximately 11:12 p.m., Kansas Highway Patrol Trooper Andy
> Dean observed a black 2003 Toyota Matrix traveling eastbound on
> Interstate I-70 near milepost 311. Trooper Dean observed that the
> Toyota was displaying a dealer promotion tag and stated Glendale
> Toyota but was unable to see a valid registration for the vehicle.
> Upon conducting a traffic stop, Trooper Dean made contact with the
> sole occupant, co-defendant Glen Herrera, who produced a California
> driver's license bearing the name of Robert Andrew Christopher,
> which was later determined to be an alias. While retrieving
> registration information and insurance paperwork, Herrera indicated
> he was traveling from California to New York to visit a friend. Herrera
> then stated the vehicle was a salvage vehicle as if to avoid further
> questions about his travel plans. While awaiting confirmation from
> dispatch that the driver's license provided by Herrera was valid and
> there were no warrants for his arrest, Trooper Dean observed the
> registration receipt to the vehicle and indicated the owner to be a
> Christopher Robert Alberto. In addition, the trooper noted that an
> address had been written on one of the registration forms and then
> scribbled out as if the wrong address had been written, further
> heightening his suspicions of criminal activity. Trooper Dean
> re-approached the vehicle and provided Herrera's documentation and
> a warning citation, further explaining the tag violation, and then
> wished Herrera a safe one and stepped back from the vehicle. While
> Herrera was putting the documentation back in the glove box,
> Trooper Dean asked if he could ask Herrera a few more questions.
> Herrera consented, and Trooper Dean inquired about the friend's
> name who he was visiting in New York. Herrera appeared panicked
> and indicated his friend's name was the same as his, which Trooper
> Dean found unlikely. At that time Trooper Dean requested and
> received consent to search the vehicle. A search of the rear cargo
> area of the vehicle yielded a four to five-inch variance which led to

the discovery of a false compartment. Herrera was arrested and provided his Miranda warning. Further inspection revealed plastic bundles which forensic testing later determined to contain approximately 24.5 kilograms of cocaine hydrochloride, a Schedule II controlled substance, which was later determined to be sold for profit in Philadelphia, Pennsylvania. After indictment on the incident charge, Herrera agreed to cooperate with agents and submitted to a debriefing during which he detailed his involvement in the drug distribution conspiracy as well as that of others, including the defendant in this case. Herrera explained that he was solicited by a longtime friend and co-defendant Robert Guzman to drive vehicles laden with cocaine from southern California to Philadelphia, Pennsylvania, where he met co-defendant Hector Jauregui and the defendant. Herrera explained that Jauregui provided the vehicles utilized to transport the drugs and that he obtained the vehicle he was driving from Jauregui at Jauregui's residence in Burbank, California, in June of 2002. Herrera further stated that he was paid $1,000 per kilogram of cocaine that he transported. Herrera indicated that he had made one prior trip in May of 2006 for which he was paid $15,000. Herrera stated that on the earlier trip in May, the defendant provided him directions to a warehouse located in Philadelphia where the cocaine was removed from the vehicle by the defendant and Jauregui in order to be resold. Agents corroborated Herrera's statements through the recorded jail telephone calls made by the defendant in this case following his arrest in February of 2007. Specifically, agents identified storage space leased by the defendant as well as a residence used to warehouse the cocaine pending sale. Further corroboration was obtained upon the arrest of co-defendant Tony Nguyen, who, at the defendant's request, traveled to Philadelphia to access storage units and attempt to liquidate assets purchased with drug proceeds. In addition, agents identified and seized in excess of $75,000 in United States currency which had been secreted by the defendant in the home of an acquaintance in southern California. Agents were able to further corroborate the statements of Herrera regarding the relationship between the Defendant and Jauregui after a letter received in the mail by the defendant was intercepted by agents. In his letter the defendant detailed certain events and made admissions illustrating the acts in

the furtherance of the cocaine distribution conspiracy between Jauregui to include the manner and method of distribution in Philadelphia as well as identifying in each of the co-defendants–or identifying additional co-defendants in a questionnaire sent to a potential witness. After indictment on the incident charges, Jauregui agreed to cooperate with agents as well and submitted himself to numerous debriefings during which he detailed his involvement in the drug distribution conspiracy as well as that of others, including the defendant. Jauregui explained that he and the Defendant flew to Philadelphia in March or April of 2005 shortly after the defendant's release from the California Department of Corrections in order to establish contact with the Defendant's narcotics associates. Jauregui further stated that he and the defendant began to transport multiple kilogram shipments of cocaine to Philadelphia in October of 2005. Jauregui stated that he provided several different vehicles which contained false compartments in order to transport the drugs while the Defendant enlisted drivers to transport the narcotics. Jauregui detailed at least four trips where in excess of fifty kilograms of cocaine were distributed by he and the Defendant. In addition, Jauregui identified several individuals in Philadelphia to whom he and the Defendant distributed narcotics. The events described, many of which occurred outside, but the earlier events occurred within the District of Kansas.

(Dk. 176, pp. 10-15). The court asked defense counsel if this would be the evidence offered against his client, and counsel responded:

> MR. OSGOOD: That would be. We've had the discovery. We got the balance of it several weeks ago. We've studied it thoroughly, and that would be the evidence that would be presented in court. There's going to be some argument about the credibility and maybe relevant conduct, and we're prepared to admit the indictment and the charges in the indictment, but, yes, the government would present that evidence and we believe there would be a submissible case and the Defendant would very likely be convicted in short order.

(Dk. 176, p. 16). The court then inquired of the defendant whether the

evidence that the government said could be offered against him was "true," and the defendant under oath answered, "Yes, it is." *Id.* The defendant also told the court he could think of no reason why the court should not accept his guilty plea. *Id.* at 20-21. The court found that the defendant was "fully competent and capable of entering an informed plea" and that his pleas were "made freely, voluntarily, knowingly and understandingly." *Id.* 21.

**DISCUSSION AND HOLDING**

At the change of plea hearing, the defendant admitted the evidence was true as it had been represented by the government. A defendant's representations at the change of plea hearing "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Accordingly, the Supreme Court recognizes that "[s]olemn declarations in open court carry a strong presumption of verity" and that a court may summarily dismiss later "conclusory allegations unsupported by specifics" and "contentions that in the face of the record are wholly incredible." *Id.* at 74 (citations omitted). Noteworthy in this regard is that at his plea hearing the defendant made no mention nor expressed any reservation about being unable to gather

exculpatory or impeachment evidence and to review the same before making his decision to plea.

The defendant asserts that had his counsel investigated the government's cooperating witnesses, in particular Glen Barrera, also known as Glen Herrera, and Hector Jauregui, then ample impeachment evidence would have been gathered. Specifically for Barrera, the defendant complains his counsel did not investigate the Barrera's statements about his prior interaction with the defendant, did not investigate information given by the defendant to dispute Barrera's information, and did not investigate Barrera's whereabouts on days in question. Specifically for Jauregui, the defendant complains his counsel did not investigate properly Jauregui's prior conviction for fraud or his numerous  incriminating statements against the defendant him that were not corroborated. The defendant characterizes the government's case against him as built largely on the testimony of cooperating witnesses. The defendant further asserts he "was not made aware of any material that could have been used to impeach the government's witnesses at trial although there was <u>some</u> to be found in regards to most of the prosecution's witnesses."  (Dk. 249, p. 4) (underlining added).

The defendant's sworn admissions at the change of plea hearing dispute any reasonable claim of prejudice. The defendant admitted then that agents were able to corroborate the statements of Herrera or Barrera "through recorded jail telephone calls made by the defendant following his arrest." (Dk. 176, p. 13). Officers were able to identify "storage space leased by the defendant as well as a residence used to warehouse the cocaine pending sale." *Id*. More corroboration came from the arrest of another co-defendant Tony Nguyen, whom the defendant had sent to access the storage space and liquidate assets purchased with drug proceeds. Agents also were able to locate $75,000 that the defendant was hiding in an acquaintance's home. The defendant also admitted he sent a letter that disclosed the following:

> Agents were able to further corroborate the statements of Herrera [aka Barrera] regarding the relationship between Defendant and Jauregui after a letter received in the mail by the defendant was intercepted by agents. In his letter the defendant detailed certain events and made admissions illustrating the acts in the furtherance of the cocaine distribution conspiracy between Jauregui to include the manner and method of distribution in Philadelphia as well as identifying in each of the co-defendants--or identifying additional co-defendants in a questionnaire sent to a potential witness.

(Dk. 176, p. 14). As the defendant has admitted earlier, some of the government's key evidence comes from him in the form of recorded phone

calls and personal correspondence that corroborate Barrera's statements and later Jauregui's statments.

The defendant's arguments are little more than speculation over what the additional investigation would have yielded and over what the materiality of any additional impeachment evidence would have been. A defendant's speculation will not suffice for showing a reasonable probability that the outcome would have been different. *United States v. Boone*, 62 F.3d 323, 327 (10th Cir.), *cert. denied*, 516 U.S. 1014 (1995). The defendant's arguments fall far short of showing the content of the impeachment evidence necessary for reasonably inferring any prejudice. *See United States v. Caraway*, 2010 WL 3721689, at 3 (D. Kan. 2010) ("[T]he petitioner must 'demonstrate with some precision, the content of the testimony they would have given at trial.'" (quoting *Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir. 1990)). Even if a more thorough investigation might have yielded some impeachment evidence against these witnesses, a likelihood not shown in the defendant's filing, this would not have overcome the corroboration provided by other witnesses and also established by other physical evidence, some of which was generated by the defendant himself. In light of the defendant's plain and solemn

admissions at his change of plea hearing, the court rejects the defendant's summary allegations that he would have gone to trial if his counsel had investigated and found some impeachment evidence against these two witnesses.[2]

In the same vein, the defendant's arguments do not even approach the strong presumption that his counsel's conduct falls within the wide range of professional assistance. As counsel said at the change of plea hearing, they had "studied it [discovery] thoroughly," and they had some arguments going to credibility. (Dk. 176, p. 16). Counsel's statement reflects that he certainly had evaluated the likelihood of impeachment evidence and believed the defendant still "would very likely be convicted in short order." *Id.* The defendant's speculation over what additional investigation might have uncovered as impeachment evidence does not make the counsel's reasons for not investigating unreasonable, particularly when the defendant's own pre-trial admissions in phone calls and a letter

---

[2]"The petitioner's mere allegation that he would have insisted on trial but for his counsel's errors, although necessary, is ultimately insufficient," for a court evaluates "the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial." *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) (internal quotation marks and citations omitted), *cert. denied*, 534 U.S. 1140 (2002).

corroborated the witnesses' statements.

The defendant also argues that counsel failed to investigate false statements made by Elizabeth Jones, in particular, that Dr. Barone distributed prescription pills to the defendant without a prescription. The defendant also contends the government agents harassed a defense witness, Mike Vizcarra. The defendant also complains his attorney failed to interview Vizcarra and two other defense witnesses, as well as, the prosecution's witnesses. The defendant further points to the government's search of two California residences in which no incriminating evidence was found and an interview of a former landlord that contradicted statements by other witnesses. These arguments fail to establish any prejudice. The defendant does not connect the statements of Jones or the possible testimony of Vizcarra or any other possible defense witness to any material issues in the government's strong evidence against him. As for the alleged non-incriminating evidence, the defendant again does not show how this evidence meets any standard of materiality as to constitute prejudice or unreasonable performance of counsel. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (A defendant's due process rights are violated when the prosecution withholds evidence from the defendant that is "material" to guilt

or punishment). The defendant's sweeping assertion of these matters being "very powerful material" is inherently incredible in light of his admissions at the change of plea hearing. None of the defendant's arguments "cast doubt" on the government's strong evidence proffered at the change of plea hearing, and "he has not suggested any way in which he might have overcome the government's strong case against him" with any of this additional evidence. *United States v. Boone*, 62 F.3d at 327. In short, the defendant has not specifically alleged any additional material facts or exculpatory evidence which, if discovered, would have caused him to go to trial rather than plead guilty.

Finally, the defendant claims his counsel was ineffective in representing him while burdened with a conflict of interest created by defense counsel's agreement with the government to not provide actual copies of the government's evidence to the defendant and by the government's restriction upon defense counsel's use of the retainer deposited on the defendant's behalf. This claim differs in that prejudice under *Strickland* is "presumed when counsel is burdened by an actual conflict of interest." 466 U.S. at 692. The movant's burden is as follows:

> To prevail on this claim, Ohiri must demonstrate a conflict between himself and his counsel "that affected counsel's performance-as

19

opposed to a mere theoretical division of loyalties." *Mickens* [*v. Taylor*], 535 U.S. [162] at 171, 122 S.Ct. 1237 [(2002)] (emphasis omitted). "An actual conflict of interest results if counsel was forced to make choices advancing other interests to the detriment of his client." *United States v. Alvarez*, 137 F.3d 1249, 1252 (10th Cir.1998). A defendant must do more than allege the potential for a conflict, he must point to "specific instances to support his contentions." *Id.* at 1251; *see also Caderno v. United States*, 256 F.3d 1213, 1218 (11th Cir. 2001) (holding a defendant "must establish that an actual financial conflict existed by showing that his counsel actively represented his own financial interest during [defendant's] trial, rather than showing the possibility of an actual financial conflict"). Thus, we can quickly reject Ohiri's first assertion that the mere existence of the debt gave rise to an actual conflict. *See United States v. O'Neil*, 118 F.3d 65, 71 (2d Cir. 1997) ("[T]he existence of a fee dispute and an attorney's motion to withdraw for that reason do not without more constitute a conflict of interest.").

*United States v. Ohiri*, 287 Fed. Appx. 32, 38, 2008 WL 2698649, at *6 (10th Cir. 2008) (unpub), *cert. denied*, 129 S. Ct. 1013 (2009). "To demonstrate an actual conflict of interest, the petitioner must be able to point to specific instances in the record which suggest an impairment or compromise of his interests for the benefit of another party." *Alvarez*, 137 F.3d at 1249 (quotation marks and citation omitted). Absent a showing of inconsistent interests, the alleged conflict is no more than hypothetical and will not constitute ineffective assistance. *Alvarez*, 137 F.3d at 1252.

There is no showing of any actual conflicts of interest here. The defense counsel's agreement with the prosecution to not provide the

defendant with copies of the actual discovery did not affect counsel's performance and did not result in counsel acting on behalf of the government at the defendant's expense. "Courts often limit disclosure of sensitive documents to counsel and prohibit criminal defendants from removing or copying such materials." *United States v. Hall*, 2009 WL 641234, at *1 (D. Kan. Mar. 11, 2009) (unpub); *see, e.g.*, *United States v. Butler*, 2000 WL 134697, at *2 (D. Kan. 2000) (Courts have upheld such agreements in order to protect the government's interest in preventing "the dissemination of discovery materials" to other persons also in pretrial incarceration). Defense counsel provided the defendant with a summary of the discovery materials. There is no evidence that this discovery agreement affected or hampered counsel's loyalty to him or the counsel's performance.

The court's analysis of the government's restriction on the defense counsel's use of the retainer is the same. This is not a conflict between counsel and the defendant. There are no cited instances in the record to suggest that this restriction impaired or compromised counsel's interests or representation for the benefit of the government. The defendant's speculation about how this could have influenced counsel's

21

representation carries no real weight.  For when defense counsel brought this circumstance to the court's attention, the court instructed the defense counsel to secure a financial affidavit and then appointed counsel to represent the defendant.  (Dk. 150, pp. 3-4, Dk. 160).  The court finds no evidence of any actual conflict of interest in this case.

As required by recent amendments to Rule 11 of the Rules Governing Section 2255 Proceedings, the court will consider in this final order whether to issue a certificate of appealability.  The movant must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To do so, the movant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).  The defendant's motion offers no debatable claim of ineffective assistance of counsel in the pretrial preparation of the case leading up to the defendant's plea and no debatable claim of an actual conflict of interest.  The defendant's filings fail to establish any reasonable argument of prejudice, deficient performance, or conflict of interest.

Consequently, a reasonable jurist would not find the court's ruling to be debatable or wrong here. The court denies a certificate of appealability to the defendant.

IT IS THEREFORE ORDERED that the defendant's motion for relief pursuant to 28 U.S.C. § 2255 (Dk. 248) is denied;

IT IS FURTHER ORDERED that the defendant is denied a certificate of appealability.

Dated this 13th day of October, 2010, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge